Ladies and gentlemen, welcome back to our newly renovated courtroom which has been closed and worked on for, I think, two years. If you find any loose hammers or saws, please don't try to utilize them during the proceedings. We have four cases this morning. Veterans' Appeal, a patent case, a trade customs case, and a government employee case, the latter of which is being submitted on the briefs and will not be argued. The first case is the Veterans' Case. Vernon Williams v. the Secretary of Veterans Affairs, Mr. Toomey. Thank you, Your Honor. Your Honor, it is my position that, in its opinion, the Veterans' Court misinterpreted a rule of law and 38 CFR 3.160C, the definition of a pending claim, when it stated that when my client submitted a second claim in 1978, the regional office denied that claim in 1979. That denial on the merits also constituted an adjudication of his original claim, which was filed in 1977. Claims are the same? The claim was for the same disability, Your Honor. There's no dispute about the fact it's the same claim? No, sir. So the government's theory is that there's a claim that's unadjudicated at the RO and it didn't get finally adjudicated if the veteran comes back and makes exactly the same claim and that identical claim is finally adjudicated, that that constitutes an adjudication of the RO, right? Yes, sir. And why isn't that so? Your Honor, it's my position that his original claim, he was never given notice of the result of the initial claim. The claim's the same. So, when he's given notice the second time around that the claim is being denied by the RO, he knows that the claim is being denied by the RO. Your Honor, the second… I mean, there's no failure of knowledge. He just learned a little later, a year later. Yeah, but he's being denied his first opportunity, his first bite at the apple to appeal, his direct appeal in 1977. What's the difference? Where's the harm? The harm is, Your Honor, when they disallowed his claim in 1977, in June of 1977, that claim became final, according, looking through the eyes of the VA, in June of 1978. He would have had to file a notice of disagreement within one year following that claim. Well, is your argument that he, that your client was somehow, had a lawyer or was healthier or was more vigorous or was more apt to have filed an appeal the first time around if he had been told he'd been turned down? Had he had… I'm trying to get at it, where's the harm? The harm is, had he been provided the proper notice, Your Honor, had he been given the proper notice… He might have appealed. Yeah, but we don't know whether or not he would have, but the opportunity was denied to him. But he never appealed the 78 case, which involved the same claim. Correct, Your Honor, but my position is that was a claim to reopen because his original claim was left in limbo. But under what possible sort of common sense theory could one say that he may have appealed the 77 claim, given that he didn't appeal the 78 claim? Following the final disallowance of his claim in 1978, June of 1978, his opportunity to appeal that 77 disallowance was extinguished because he never received the proper notice of that. But he could have gotten the same benefit of appeal. What difference would it have made if he had appealed the 77 versus the 78? He didn't appeal the 78, right? He would have lost out, first of all, on 17 months of benefits. And perhaps he didn't get the notice because he didn't respond to a request for information. Isn't that in this case as well? The disallowance was filed in June of 1978, but all it says in there, as far as where they sent it, was for record purposes. It doesn't identify who they sent it to, if they sent it. It doesn't identify whether or not they sent him notice of his appellate rights. There's nothing. He's been denied his first bite of the apple. There's a presumption of regularity that operates in government operations. I mean, the theory would be that if all the papers were in order, if the RO had everything it needed on the original claim, it would have been adjudicated. That's correct, Your Honor. In the lower court, the VA was allowed to pursue that argument, but they declined. They instead pursued an abandonment theory, which the Veterans Court claimed it was not feasible or what have you. But they could have argued that, Your Honor, but the VA never did. And the Veterans Court then assumed that. Well, if your client had appealed the second, I mean, he renewed his claim and filed a claim. Maybe he said he didn't hear anything, so he renews his claim with the RO, and then he gets an adjudication on that. If he had chosen to appeal that adjudication and had prevailed, right, then he would have been able to establish the earlier date for his benefits and whatnot, right? He wouldn't have been harmed. I think the VA would have said your date of claim is the date you reopened your claim, Your Honor. It's my position that that subsequent 1978 claim, tactically, is a claim to reopen. And a claim to reopen is the first date upon which they would award you benefits. The definition of a reopened claim is any application for benefit received after a final disallowance. Right. So where was the final disallowance of the original claim? June 2, 1977 is when they disallowed his claim, just that they never gave him notice of it. Had they given him proper notice of that claim, he would have had the opportunity. He could have obtained counsel. He could have obtained favorable medical evidence. He could have appealed that to the board. Technically, they could have granted him benefits after that 1977 disallowance, but they failed to give him notice. Do you mean technically or theoretically? Well, it's my position, Your Honor. They ultimately turned him down. Correct, Your Honor. And he didn't appeal. I mean, when the same thing, essentially, when he had that opportunity a year later, he didn't exercise it. A year later, it would have been, if you're saying the subsequent claim? Yeah, I mean, he didn't appeal to 78. He did not appeal to the 78 claim, but that would have been his second bite of the apple. He's allowed to appeal pursuant to rules, a claim to reopen. Once that's denied, he can appeal that. But his original claim, after it should have been finally disallowed, he'd have to file a clear and unmistakable evidence claim, or he'd have to file a claim to reopen. Because according to the VA's paperwork, that claim was final following one year after the disallowance in 1977. So a year later, in 1978, that claim was disallowed, and it was final. He had to file a claim to reopen. And moreover, as far as a claim to reopen, he would have had to known what the reasons therefore were in order to submit new and material evidence to support that claim. If he didn't get notice of it, he didn't get the reasons therefore either. So how was he going to know what new and material evidence is available to support his claim in the 1978 claim when he filed that subsequent claim? Again, he's out. His subsequent claim in 1978 was practically an exercise in futility because he had no idea why his claim was denied at that point. But how was the 78 claim adjudicated? It was adjudicated sort of on the merits, right? I mean, whether he presented sufficient evidence to establish the disability, right? I would submit that the claim was reopened and adjudicated on the merits. On the merits. However, that would have been – if he had the opportunity to appeal that, that's fine. That would have been his second opportunity to appeal that claim. His first claim was disallowed in 1977, but he never got the opportunity. He's being deprived of his opportunity. And, of course, my argument is according to Cook v. Pritzker. But you're saying that discouraged him from filing an appeal in 78? No, he didn't know what happened to his claim when he filed in 78. So when he files a subsequent claim, he has no idea what happened. That just goes further to prove that he didn't know that they denied his claim in 1977 because they never sent him notice of disallowance as required by the statutes. Anything further? We can save the remaining time for rebuttal if you wish, or continue as you like. Just a few more words, Your Honor. It's my position that the VA's failure to comply with the statutory procedural requirements regarding notification benefit determinations had the effect of extinguishing my client's right of appeal on that December 77 claim. There's a language in the opinion that says clearly had the VA not provided notice of the denial in 1977, the claim would have remained pending. Correct, Your Honor. What do they mean by that? You're arguing that there was no notice of the denial in 1977, right? Yes, Your Honor. The subsequent decision disposed of the same claim. I would say disposed of the same benefit that he received. What the CAVC was saying was the claim was pending in 1978 because there had been no notice, right? Yes, Your Honor. So the claim is pending, and then it got extinguished by the 1988 disallowance. That's what you're saying, but it's my position that they didn't comply with the law because he should have had an opportunity to appeal the first one but was denied that opportunity. There are rights guaranteed by the statutes themselves that he should have that opportunity to appeal that December. The only way it would have mattered is if he'd won the claim and then the effective date would have been up for grabs, and that is determined by when he filed the claim. Yes, Your Honor. But he didn't win. He didn't win, Your Honor. So when he filed the claim, he becomes moot. He got an adjudication of the claim. He got an adjudication claim dated back to 1994, and he's asking for an earlier effective date, and as part of a finding of an earlier effective date, he can come back later and claim, well, I have a pending and open claim, and that pending open claim is what I would submit to the court is his… Right, but I think what the presiding judge was saying was if your client had prevailed in 1978 and he had appealed and had prevailed, then he might have been told, well, you're stuck with an effective date as of 1978, not 1977. Yes, Your Honor. At that stage in the game, he could have argued that the error was harmful in failing to have provided the notice earlier. He could have argued that, but I… But because he lost, right, or he didn't challenge, didn't establish that he won, that then he was unable to show that the error was harmful. I think the court's question is that… Do you see what we're talking about? Had he won, the effective date of his award would have been 78. 78, and he would have said, that's terribly unfair. The effective date should have been 77. But the VA would have come back and said, well, we have a disallowance of your claim June of 1977, three months after you filed your original claim. You had one year to file your notice of disagreement but didn't do nothing. June of 1978, your claim… I am, Your Honor. Right, but the point is that the failure to have given him notice of the original, of the disallowance in 1977, is harmless error unless he can establish that he was going to prevail on the 78 claim, thus putting into question whether the effective date should be 77 or 78. As it was, it was in the 90s because he filed a later claim where he prevailed. He prevailed at the – well, actually he prevailed in 2002. 2002. 2002. Back to his claim in 94. And he's got a 94 effective date now? He has a 94 effective date. You were able to establish that on winning in 2002, right? Yes, sir. But the bottom line is, according to the statutes, you're supposed to get notification of entitlement or non-entitlement to benefit determinations on each notification. We understand that. Had he done that, you would have had the opportunity. Well, that's essentially my argument, Your Honors, if you have any more questions. We'll save your remaining time for rebuttal. Thank you, sir. Mr. Edmonds. Thank you, Your Honor. May it please the Court, there is no harm here and the judgment of the Veterans Court should be affirmed. If the 78 application is considered a request to reopen, then how do we distinguish the facts of this case from Myers? And doesn't Myers say that if a claim is pending, a later request to reopen the claim, that claim does not close the pending claim? If a claim is pending, Your Honor. But first of all, the premise is that the 78 claim is a claim to reopen. Right. And I disagree with the premise. But assuming that that were so, the 78 claim was treated as an original claim and there was a denial of that claim, and there could have been, the veteran could have filed a notice of disagreement. And then if, as in Myers, the VA had failed to issue a statement of the case, then you would have Myers. But Myers is completely different. In Myers, there was a notice of a disagreement filed. There were subsequent applications to reopen, and there was never a response from the VA, a statement of the case that is required to issue in order for a veteran to perfect an appeal to the board. But in this case, since we know, at least on this record, everybody is conceding that we can assume he didn't get notice of the denial of the 77 claim, right? Well, we have to assume it because the Veterans Court… So that's a done deal. Your Honor, it's not a reopened claim, 78. Yes, yes. Well, if you look at the definition of reopened claim, it's an application for a benefit received after a final disallowance, right? Right. So I guess then we have to find out what a final disallowance is. So we go up there and go back up to D. And a final disallowance is a disallowance plus notice. Is that right? That's correct, Your Honor. So we should read E, if you will, reopened claim to say any application for a benefit received after a final disallowance and notice thereof given. Yes, Your Honor, that's exactly correct. E obviously incorporates by reference the definition provided in 3.160D. E speaks to a claim reopened for new and material evidence, which is the, aside from Q, which is a different matter, is one of the two ways of challenging a decision. And clearly it requires before a claim is, quote, unquote, reopened for new and material evidence, that there had been a final adjudication in the first place. In this case, there was not. There were two applications for the same claim. The two applications were denied by the 1979 decision that said, we deny service connection for the nervous condition that the veteran claimed in both applications. So at what point in time could he have appealed the 97 denial or the denial of the first application? The 79 denial within one year from the date of the decision by filing a notice of disagreement, then receiving a statement of the case, and then perfecting an appeal to the board. But wouldn't you have said that it was untimely because the appeal was filed in 1977? You're saying he could have appealed the 77 not – I mean, he never got a denial. That's the problem. Right. So when could he have appealed – I mean, he could only appeal the denial of the 77 claim once he gets it, and he's never gotten it. And again, that is why the claim would remain open under well-established case law if there had not been an intervening denial. But there was an intervening denial. He filed a second application, a second statement, form statement in support of claim on the very same claim, and that claim was denied. And what he received, actually, in the appendix at page 115 is a letter that doesn't refer to either application but simply refers to the fact that his claim for service connection has been denied. It does not refer to either application. Now, the appellant's argument is that the rating decision referred specifically to the first application, and that is true. But at the time, the practice of the VA was not to mail the rating decision but only to mail the letter and the notice of appellate rights. And your case relies on the similarity between the 77 and the 78 application. The identity. Let's assume hypothetically that in 77 he submitted all of this great evidence that then the VA never actually denied it. And in his 78 application, it was bare bones, completely bare bones. So they denied the 78 application. Would you still say that that denial serves to also deny the 77 application? Are they the same claim, Your Honor? The same claim, but it's denied because he didn't submit sufficient evidence in the 78, but he had submitted a boatload of evidence with respect to the 77. Yes, Your Honor. Even if they're the same claim, the denial constitutes a denial of that claim and obtains finality and starts the appellate process. So the fact if, in fact, he had submitted a boatload of evidence in 1977 along with his claim and had not submitted sufficient evidence with his 1978 application, then it would not matter because there is a decision from the Veterans Court on the claim. And this court has been clear in… Wouldn't the decision on the claim have to review all of the evidence of record including the evidence originally put in?  And that decision could be challenged. Certainly, if there was no… You know, if the RO failed to properly consider evidence… The point is that the veteran isn't prejudiced when he… When you say he doesn't reopen his claim, but he reminds the secretary that he has a claim, the same claim, if his second bite of the apple is not very good one, didn't cite much evidence. If he had cited good evidence earlier, he would still get the benefit of it. Yeah, he should. I mean, if he got an RO decision that did not look at all of that evidence, he would obviously be able to appeal that to the board and say the RO didn't comply with its duty to develop my claim and to look at all the evidence. So that would give him an issue had he appealed and had the facts been, as Judge Prost put it to me in the hypothetical. But those, in any case, aren't the facts here. Well, if his second claim, let's call it the 78 claim as opposed to 77 claim, if it wasn't a reopened claim, it's not an original claim, right? Yes. It's not an original claim. It's not an original claim. So it's not original and it's not reopened. What is it? It is an additional application on a pending claim. If Your Honor will look at 3.160C… I'm sorry, 3.160B first. An original claim is an initial formal application on a form prescribed by the secretary. C, a pending claim, this is actually the status of a claim that is being defined, is an application, formal or informal, which has not been finally adjudicated. In between when you have final adjudication… I'm trying to figure out what is 78. What's the proper nomenclature for the 78 piece of paper he filed? It's a statement in support of the claim that is pending at that time. We're in the regulation that we find authority for such an animal. Well, I think the authority is implicit in 3.160 between B, C, and D because there are… I think the use, for example, in 3.160B of an initial formal application or the use in 3.160A of an informal claim, which is something that is filed and then an application is subsequently filed to that, contemplates that the VA will receive and, in fact, in practice, it does receive many statements that pertain to a given claim that is pending. It is frequent practice for the VA to receive supplemental statements in support of a claim before final adjudication by the RO. And that is another reason why this regulation and the statutes and the cases that are involved should be interpreted in the way the government suggests here because if the VA were required to decide all of these papers that it may receive as a claim, as Mr. Williams argues, it would stop the process. I mean, the process… They decided his 1977 claim, right? Yes. They disallowed it. Right. They just didn't tell him. That's true, Your Honor. But… What's the veteran supposed to do? When he files a claim that passes muster as a claim, RO looks at it, RO says, we disallow. And they take the notice of disallowance and they put it in the file. Well, in that circumstance, a case law provides that the claim remains open if there's not a subsequent denial of the claim. So if all we had here was the 77 and then this new claim that was filed around 94, you say he would get back to you? Yes. Sure. If the claim remained pending, if there hadn't been a denial in the middle, Your Honor. The 78, if there hadn't been a denial. Yeah. If there hadn't been the 1979 decision on the same claim explaining to the veteran that he was being denied service connection for the nervous condition that he put in his application, then under this court's precedence, under the veteran's court's precedence in the cases that Mr. Williams cites, such as Myers and several other cases, then the pending claims doctrine would apply in that instance and the claim would be open. And the VA would be in a position of having to consider whether that claim, the 1977 claim, and we're assuming that the 1977 claim wasn't properly handled, which I think… It seems to me that your argument has to, in essence, create some space in 3.160 to kind of slip in a C1 or an E1 or something in order to describe the facts in this case. Aside from the fact that the secretary is uninterested in rewarding financially this particular veteran with an earlier effective date than 94, which I could understand, what's the policy argument against the appellant's point of view, which is to say, okay, when you turn me down, give me notice because if you give me notice, then I can decide whether I want to appeal or don't appeal. Don't put me to the effort of having to, as you say, file some supplemental piece of paper to remind you that you haven't done what you're supposed to do. What's the harm to the agency, let's say, other than there may be a few pending cases that you'd lose on if we ruled in favor of the appellant? What's the policy argument against saying, well, when there's a notice of disallowance, you've got to give them notice and you don't, foul. I don't think there is a policy argument against that because for the very reasons I was just stating, if there hadn't been a 1979 decision, then the claim would be open and the VA is required by the statutes to give that notice. So I don't have a policy argument. My counter to that would be, well, the appellant's rule saves the agency from the horrible problem of ending up being stuck with a 50, 40-year effective date back sweep because they fail to give notice. It does. Yeah, and in this case, when the agency has made a denial. I would think the agency would rather be strapped with a rule that says you have to give a notice of the disallowance when you give it because that then triggers a time for appeal. They don't appeal. They're finished. They're cooked. You can't have an administrative error at the RO. We forgot to send the notice. We put it in the file. And 20 years later, you discover that it's not, and the veteran gets a backward sweep of benefits for 20 years. He wouldn't have gotten if you'd sent the notice, right? That's correct, Your Honor. So why isn't the policy argument stronger in favor of what the appellant wants? Because I think that what the appellant wants and the policy argument that you're articulating are two different things, Your Honor. What the appellant wants is once a decision has been made, a final decision on a claim, even if something was left open. Yes, Your Honor. Subsequent events mooted the policy argument. Right. Yes, Your Honor. I think that captures it very well. That policy argument of not having claims be open that would indeed favor the Veterans Administration or the Department of Veterans Affairs is just not implicated in this case because the case was closed. And... I see, I see your point. But I mean, I'm thinking of a circumstance in which the veteran files a request for claims. There's a disallowance. Instead of sending the notice, they put it in a file. He dies. Dies two months later, three months later, whatever. Then there never was a chance for an appeal. Let's assume he's got survivors who could actually take if he could have established that he had a right. The failure to give the notice seems to me to be problematic. If the veteran never got any notice in any case and ultimately died... What would you do then? You would have a circumstance where, I mean, assuming survivors could... You'll probably face that situation when you come to it. Well... Don't ask hard questions. Is that the answer? No, that's not the answer, Your Honor. The answer to the question is that the claim is alive. I mean, the claim stays because this court and the Veterans Court have held that if there isn't notice given... The survivor can't pursue the claim, right? Right. That's the problem. Well, that is the problem. It's a veteran dead. Veteran dead. Claim dies with a veteran. Yeah. Yeah. And I suppose there is a problem in that, but I think the problem in that is inherent in any adjudication of a veteran's claim. I don't know how you get around it. I mean, the statute requires that you provide notice, that the VA provide notice. And if it doesn't provide notice... What I understood the appellant to be arguing is a very straightforward, simple argument, which is when you turn me down, I'm entitled to notice so I can decide whether I want to appeal or not appeal. Right. And he did not have that opportunity here during that time period before he elected to come back and renew, require people to call, remind the RO that he had a claim. Right. And I... Your Honor, I think that the Department of Veterans Affairs is required to give notice, but there is some circumstance conceivable that it doesn't and that that could affect a veteran, you know, in the way that you're suggesting. But I'm not sure if there's any way, and I am sure that interpreting the question in this case will not prevent that outcome from happening. So... Thank you, Mr. Redmans. With that... We understand your position. Thank you. Mr. Toomey has a little rebuttal time to rebut what Mr. Redmans said rather than to raise new arguments. Thank you, Your Honor. As far as the Myers case, the court held that they were required to provide a statement of case. In my case, my argument, again, is they were required to provide notice of the decision and notice of his appellate rights, which they didn't do in that first adjudication of his original appeal. They didn't get his opportunity to file a direct appeal of his original claim. Secondly, I would claim that this 77 claim was finally adjudicated one year after the June 1977 disallowance, which makes the 78 claim to be a claim to reopen. And lastly, as far as the policy question, I think the court should force the VA to comply with the notice requirements. To deem his claim denied by a subsequent claim to reopen effectively relieves the VA of their obligations to file these notice requirements. That's the master hook. That's all I have. Thank you, sir. Thank you, Mr. Toomey. The case will be taken under advisement.